# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE MARTINEZ and
FLORIADA TAFOYA,

       Plaintiffs,

vs.                                                                    No. CIV 04-1326 JB/RLP

NEW MEXICO DEPARTMENT OF HEALTH,
a New Mexico State Agency, and MICHELLE LUJAN-
GRISHAM and BRIAN BROZOST, individually and
as supervisors of the NEW MEXICO DEPARTMENT
OF HEALTH AND THE DEPARTMENT OF CHILDREN,
YOUTH AND FAMILIES and NEW MEXICO STATE
PERSONNEL OFFICE, a New Mexico State Agency,
and SANDRA K. PEREZ, individually and as a
supervisor of the NEW MEXICO STATE PERSONNEL
OFFICE,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants CYFD, Bolson, and Ivey's

Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds, filed August

10, 2005 (Doc. 43)("Summary Judgment Motion").  The Court held a hearing on the motion on

November 3, 2005.  The primary issue is whether the individual Defendants Mary Dale Bolson and

Russell Ivey are entitled to qualified immunity for their actions alleged in the Complaint.  Because the

Plaintiff Antoinette Martinez has not met her burden to show that the individual Defendants Bolson

and Ivey are not entitled to qualified immunity, the Court will grant summary judgment in favor of

Bolson and Ivey on Count III.  The Court will also dismiss Count IV, conspiracy pursuant to § 1985

against the Defendants Bolson, Ivey, and the Department of Children, Youth and Families ("CYFD"),

because Martinez conceded that claim in her response to the Defendants' summary judgment motion and at the November 3 hearing.  Further, because, under the terms of the employment contract that existed between Martinez and the CYFD, the CYFD did not have the obligation to provide Martinez with a post-termination hearing, the Court will grant summary judgment in favor of the CYFD on Counts I and II.

## FACTUAL BACKGROUND

The parties agree that there are no material factual disputes barring judgment as a matter of law.  See Summary Judgment Motion at 5; Transcript of Hearing at 21:12-8 (Geran)(taken November 3, 2005)("Transcript").[1]  Beginning in 1994, the CYFD employed Martinez as a Client Service Agent.  See Affidavit of Antoinette Martinez ¶1, at 1 (taken August 29, 2005)("Martinez Affidavit").  One of Martinez' job duties was housekeeping work.  See id.  On February 26, 2003, Martinez sustained an on-the-job injury that thereafter required her to perform light duty.  See id. ¶2, at 1.  Martinez alleges that, when placed on light duty, the only task she could not perform was the housekeeping, which was a small portion of her job.  See id. ¶¶ 1-2, at 1.

Martinez alleges that, in August 2003, she expressed to employee relations personnel that she desired and was able to resume doing all of her pre-injury employment duties.  See id. ¶4, at 2. Martinez alleges that, despite her wishes and abilities, her doctor would not provide her with the release required to return to full employment, and that Risk Management denied her the option of getting an opinion from a second doctor.  See id. at ¶¶5-6.  In September 2003, Martinez' doctor made Martinez' restricted duty permanent.  See id. ¶6, at 2; First Amended Complaint ¶21, at 6, filed

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

April 4, 2005 (Doc. 19)("FAC").  On September 23, 2003, Ivey informed Martinez that, because she could not perform the duties associated with her position, she would be involuntarily separated from employment pursuant to N.M. Code R. § 7.10.13.  <u>See</u> Letter from John R. Rinaldi to Antoinette Martinez at 1-2 (dated September 23, 2003)("Rinaldi Letter"); Summary Judgment Motion at 4; Plaintiff Martinez' Response to Defendants CYFD, Bolson, and Ivey's Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds at 3, filed August 29, 2005 (Doc. 61)("Response").  On October 8, 2003, Ivey notified Martinez that, because she had reached Maximum Medical Improvement and was incapable of performing her pre-injury duties, because the CYFD had accommodated her restrictions since the injury, and because the CYFD had exhausted efforts to find her a suitable vacant position, her employment would cease on October 31, 2003.  <u>See</u> Letter from Russell Ivey to Antoinette Martinez at 1 (dated October 8, 2003)("Ivey Letter").

Martinez was "disabled" on her termination date, October 31, 2003, and, pursuant to § 7.10.13, was not provided a post-termination hearing.  <u>See</u> Martinez Affidavit ¶7, at 3; Summary Judgment Motion at 4.  On April 8, 2004, the Honorable C. Leroy Hansen, United States District Judge for the District of New Mexico, held N.M. Code R. § 7.10.13 unconstitutional, because it violated due process by denying termination hearings to terminated, disabled state-employees.  <u>See</u> <u>Copelin-Brown v. N.M. State Personnel Office</u>, CV02-1638 (D.N.M. April 8, 2004)(Hansen, J.). Bolson informed Martinez, via a letter, dated September 22, 2004, that she was entitled to appeal her termination through the State Personnel Office ("SPO").  <u>See</u> Letter from Bolson to Martinez at 1 (dated September 22, 2004)("Bolson Letter").  The letter stated that Martinez should contact Valerie Park, Medical Issues Coordinator and an employee of the CYFD, if she had any questions.  <u>See</u> <u>id.</u>

Martinez did not pursue an appeal.  See Summary Judgment Motion at 4; Response at 3.  On March 1, 2005, the United States Court of Appeals for the Tenth Circuit affirmed Judge Hansen's decision holding § 7.10.13 unconstitutional.  See Copelin-Brown v. N.M. State Personnel Office, 399 F.3d 1248 (10th Cir. 2005).

## PROCEDURAL BACKGROUND

This case came before the Court upon the Defendants' removal of it to federal district court from the First Judicial Court of the State of New Mexico, where Martinez had commenced the action on October 18, 2004.  See Verified Petition for Removal at 1-3, filed November 24, 2004 (Doc. 1). The First Amended Complaint contains four claims: Counts I and II, brought against the CYFD, for breach of contract and breach of the covenant of good faith and fair dealing, see FAC ¶¶39-49, at 12-15; Count III, brought pursuant to § 1983 against Bolson and Ivey, for violating the Equal Protection and Due Process Clauses by "promulgating and enforcing a regulation which facially and without rational basis discriminates against persons with disabilities" and "firing a disabled person pursuant to a regulation . . . denying that person a due process required hearing," see FAC ¶¶53-54, at 16; and Count IV, brought pursuant to § 1985(3) against the CYFD, Bolson, and Ivey, for conspiracy, see FAC ¶¶59-61, at 17-18.

The Defendants now request that the Court grant them summary judgment on all four of Martinez' claims.  The CYFD moves for summary judgment on Counts I and II based upon Martinez' refusal to participate in termination hearings, which it contends amounts to Martinez' refusal to exhaust contractual remedies as the law requires.  See Summary Judgment Motion at 2, 6.  Bolson and Ivey move for summary judgment on Count III based upon qualified immunity, and on the contention that they were not responsible for subjecting Martinez to a deprivation of rights,

privileges, or immunities. See id. at 6-10. The CYFD, Bolson, and Ivey move for summary judgment

on Count IV based upon its failure to state a claim. See id. at 11-12.

Martinez did not contest the Defendants' request for summary judgment on Count IV in her

response to their summary judgment motion, and expressly conceded Count IV at the November 3

hearing. See Response; Transcript at 19:10-22. At the November 3 hearing, Martinez also clarified

that Count III was not being brought against Bolson and Ivey in their official capacities, which the

Eleventh Amendment would prohibit. See Transcript at 19:24-20:8 (Geran).

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest

upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there

is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing

Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more

than merely colorable such that a jury could reasonably return a verdict for the non-moving party.

Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough

to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir.

1988). The Court may only consider admissible evidence when ruling on a motion for summary

judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir.

1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an

absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal quotations omitted). "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity protects federal and state officials from liability for discretionary functions and from the "unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991). These protections allow society to avoid the high cost of suit for both government and the public including "the expenses of litigation, the diversion of official energy from pressing public issues, and deterrence of able citizens from acceptance of public office." Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). To serve these purposes, "qualified immunity questions should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987). Qualified immunity bars suits that result both from direct allegations of unconstitutional official behavior and suits brought under §

-6-

1983.  See Harlow v. Fitzgerald, 457 U.S. at 818 n.30.

Once a defendant asserts qualified immunity, the plaintiff must make a particularized showing that: (i) the defendant violated a constitutional right; and (ii) the right was clearly established such that a reasonable official would recognize a violation.  See Patrick v. Miller, 953 F.2d 1240, 1243 (10th Cir. 1992).  The plaintiffs must plead specific facts that allege that the defendant "subjected a citizen to the deprivation, or caused a citizen to be subject to the deprivation."  Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998).

A showing that a defendant violated a statute or administrative provision is not sufficient to demonstrate that the defendant violated a clearly established constitutional right.  See Davis v. Scherer, 486 U.S. 183, 194 (1984).  Such a showing is, however, relevant to the reasonableness of an official's conduct.  See Roska v. Peterson, 328 F.3d 1230, 1251-52 (10th Cir. 2003).

Generally, if a plaintiff can demonstrate that a constitutional violation occurred and the law was clearly established, the qualified immunity defense will fail.  See Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d 836, 842 (10th Cir. 2005).  If, however, the official pleading the qualified immunity defense can demonstrate that his conduct was nonetheless objectively reasonable, alleges extraordinary circumstances, and can prove that he neither knew nor should have known of the relevant legal standard, the qualified immunity defense should be maintained.  See id. (citing Harlow v. Fitzgerald, 457 U.S. at 819); Roska v. Peterson, 328 F.3d at 1251.  It is the defendant's burden to prove that his conduct was nonetheless objectively reasonable.  See Roska v. Peterson, 328 F.3d at 1251.  The Tenth Circuit treats the objective reasonableness assessment as the third step in its overall qualified immunity analysis.  See id. (stating that, where a violation of a constitutional right has been established and the law concerning that right has been clearly established, "[t]he next step

in the analysis is to consider the objective legal reasonableness of the state actor's actions")(internal quotations omitted).   "Where officers of reasonable competence could disagree on the issue, immunity should be recognized."  Id. (internal citations and quotations omitted).

Exceptional circumstances that may render an official's conduct objectively reasonable and that therefore justify qualified immunity include reliance on a state statute, regulation or official policy, and reliance on the advice of legal counsel.  See Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d at 842.  "[I]n considering the relevance of a regulation under a qualified-immunity analysis, the appropriate inquiry is not whether a reasonable state officer could have concluded that the [regulation] authorized the unconstitutional conduct in question," but "whether reliance on the [regulation] rendered the officer's conduct objectively reasonable," considering factors such as: (i) the degree of specificity with which the regulation authorized the conduct at issue; (ii) whether the state officer complied with the regulation; (iii) whether the regulation has fallen into desuetude; and (iv) whether the officer could have reasonably concluded that the regulation was constitutional. Roska v. Peterson, 328 F.3d at 1253.

## LAW REGARDING EQUAL PROTECTION

The Equal Protection Clause of the Fourteenth Amendment requires government officials to treat similarly situated parties similarly.  See U.S. Const. amend. XIV, § 1.  "States must treat like cases alike but may treat unlike cases accordingly."  Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 531.  Unless a complaint involves a fundamental right or the plaintiff is a member of a suspect class, courts uphold laws rationally related to a legitimate government purpose. See id. at 532.  The Tenth Circuit has determined that disabled persons do not constitute a suspect class; rational basis scrutiny applies to equal protection claims regarding disabled people.  See Copelin-Brown v. N.M. State

Personnel Office, 399 F.3d at 1255.

"Under rational-basis review, where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation." Univ. of Ala. at Birmingham v. Garrett, 531 U.S. 356, 366-367 (2001) (internal quotations omitted). The Tenth Circuit found an equal protection violation in Copelin-Brown v. N.M. State Personnel Office when a disabled person was terminated, but the violation was in the manner of, rather than the reason for, termination. See 399 F.3d at 1255. The Copelin-Brown court held that N.M. Code R. § 7.10.13 lacked rational basis:

> [T]he administrative ease of not requiring a hearing can be a reason sufficient to withstand rationality review. However, Defendants' answer, response to Plaintiff's motion for summary judgment, and appellate briefs fail to present any facts showing that the regulation in question eased administrative burdens. Further, the Court has stated that within rational basis scrutiny, the State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. In the instant case, because Defendants have only alluded to the administrative burdens associated with providing disabled persons post-termination hearings or appeals, we find the distinction between disabled and non-disabled persons arbitrary and irrational.

Id (internal citations and quotations omitted).

## LAW REGARDING DUE PROCESS

The State may not "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend XIV, § 1. The Due Process guarantee affords both procedural and substantive protections. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). To show a procedural due process violation, a plaintiff must establish the defendant deprived him of a life, liberty or property interest. See United States. v. Salerno, 481 U.S. 739, 746 (1987). A property interest in employment exists where an employee has a legitimate expectation of continued

employment.  See Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).  Permanent

state employees who have completed a probationary period have a protected property interest in their

continued employment; existing "restrictions on the government's ability to terminate are sufficient

to create a property interest in [an employee]."  Copelin-Brown v. N.M. State Personnel Office, 399

F.3d at 1254.

 To determine whether an employee received the requisite level of procedural process, the

court balances "the private interests in retaining employment, the governmental interest in the

expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and

the risk of an erroneous termination."  Matthews v. Eldridge, 424 U.S. 319, 335 (1976).  A pre-

termination hearing is constitutionally required, but what constitutes that hearing is determined in

light of available post-termination procedures.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S.

at 545.  "Where . . . the pre-termination process offers minimal opportunity for the employee to

present her side of the case, the procedures in the post-termination hearing become much more

important."  Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1255.  The Tenth Circuit

in Copelin-Brown continued: "In the instant case, [the employee] . . . was afforded no

post-termination hearing or opportunity to appeal the SPO's decision to terminate her.  Accordingly,

the district court was correct in finding that the lack of procedural due process violated [the

employee's] constitutional rights."  Id.  A pre-termination hearing the terminating agency conducts

is sufficient to satisfy procedural due process where state law provides a full evidentiary post-

termination hearing.  See Davis v. Scherer, 468 U.S. at 192.

 Procedural due process has two constitutionally required elements: (i) the employee must

receive notice; and (ii) the employee must have an opportunity to respond.  See Cleveland Bd. of

Educ. v. Loudermill, 470 U.S. at 546.  The opportunity to respond must be "at a meaningful time and in a meaningful manner."  Matthews v. Eldridge, 424 U.S. at 333.  The Tenth Circuit defined "meaningful manner" to require: "(1) an impartial tribunal; (2) notice of the charges and that the notice be given a reasonable time before hearing is to take place; and (3) except in emergency situations, that the hearing be held before termination becomes effective."  Walker v. United States, 744 F.2d 67, 70 (10th Cir. 1984), overruled on other grounds by Melton v. City of Okla. City, 928 F.2d 930 (10th Cir. 1991).

The plaintiff must establish that a particular defendant was responsible for the due process violation.  See Martinez v. Mafchir, 35 F.3d 1486, 1491-92 (10th Cir. 1994).  In Martinez v. Mafchir, a mother did not receive notice of a hearing on a neglect petition regarding her child.  See id. at 1489. The mother alleged that a defendant social worker disregarded procedural due process by not notifying the mother of the hearing.  See id.  The Tenth Circuit determined that the New Mexico statute did not specifically identify who was responsible for providing notice; there was indication that another party, not the social worker, was responsible.  See id. at 1493.  The social worker's actions indicated that she otherwise acted diligently, and the Tenth Circuit found no procedural due process violation on her part.  See id.

## LAW REGARDING § 1985(3) CONSPIRACY CLAIMS

The essential elements of a § 1985(3) conspiracy claim are: (i) a conspiracy, "motivated by racially-discriminatory animus;" (ii) to deprive the plaintiff of equal protection or equal privileges and immunities; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom  Paris v. Sw. Bell Tel. Co., 94 Fed. Appx. 810, 815 (10th Cir. 2004); Duran v. Cmty. First Bankshares, Inc., 92 Fed. Appx. 756, 762 (2004).  Conclusory allegations that the defendants acted

in concert or conspired without specific factual allegations to support such assertions are insufficient to state a claim under § 1985(3).  See Merritt v. Hawk, 153 F.Supp.2d 1216, 1225 (D. Colo. 2001).

The Tenth Circuit has determined that § 1985(3) was designed to protect against solely race-based conspiracies.  In doing so, the Tenth Circuit has stated that § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives."  Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985).  The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus.  For example, in Paris v. Southwestern Bell Telephone Co., the Tenth Circuit held that the plaintiff's hostile-work-environment claim failed because she did not show racial, discriminatory animus on the part of the alleged conspirators.  See 94 Fed. Appx. at 815.

### NEW MEXICO LAW REGARDING STATE EMPLOYMENT CONTRACTS

The State Personnel Act requires a discharged employee to raise breach of contract issues before the State Personnel Board ("SPB").  See Barreras v. N.M. Corrs. Dep't, 2003-NMCA-027, ¶2, 133 N.M. 313, 315, 62 P.2d 700, 772; N.M. Stat. § 10-9-10(B).  A state employee's suit for breach of contract "necessarily involves the State Personnel Act and attendant rules, regulations and personnel policies, and the essence for those claims can be adjudicated in proceedings before the SPB."  Barreras v. N.M. Corrs. Dep't, 2003-NMCA-027, ¶8, 133 N.M at 316, 62 P.2d at 774.  As a result, "the employee's remedies [for breach of contract] are limited to those set forth in the State Personnel Act."  Id. 2003-NMCA-027, ¶1, 133 N.M. at 315, 62 P.2d at 772.  "[T]he State Personnel Act provides the exclusive remedy for [an employee's] breach-of-contract claims based on that same Act."  Id. 2003-NMCA-027, ¶21,  133 N.M. at 318, 62 P.2d at 775.  Where a statute offers exclusive remedies, a plaintiff must exhaust those remedies before proceeding to the district court for relief:

-12-

"With either [exclusive remedy, the statute] requires exhaustion of administrative remedies." U.S. Xpress, Inc v. N.M. Taxation & Revenue Dep't, 2006-NMSC-017, ¶7, 139 N.M. 589, 136 P.3d 999, 1002.  After the employee takes an appeal to the SPB, the employee "may appeal the decision to the district court."  N.M. Stat. § 10-9-18 (G).

Exhaustion of administrative remedies is not required, however, "where it would be futile or fail to provide adequate relief."  Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993).  "Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms."  Id.  If an administrative appeal is proceeding, it is inappropriate for the court to retain jurisdiction over the matter.  See Calvert v. Callahan, 990 F.Supp. 1280, 1283 (D. Kan. 1997).  The administrative agency in Calvert v. Callahan did not provide a hearing for five years after the complaint.  See id. at 1281. The court acknowledged that the plaintiff's filing suit in district court probably prompted the agency to provide a hearing.  See id.  Despite the delay and the motivation for the agency, the court held that "judicial intervention is [not] necessary to complete the administrative process in a reasonably prompt manner" and "exhaustion of administrative remedies at this juncture would not be futile."  Id. at 1283.

"Whether express or not, every contract in New Mexico imposes the duty of  good faith and fair dealing upon the parties in the performance and enforcement of the contract."  WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶25, 137 N.M. 343, 350, 110 P.3d 1080, 1087.  A cause of action for breach of an implied covenant of good faith and fair dealing cannot prevail without an accompanying showing for breach of a contract.  See Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶51, 133 N.M. 669, 685, 68 P.3d 909, 925.

## NEW MEXICO LAW REGARDING TERMINATION OF STATE EMPLOYEES

The purpose of the SPO "is to establish for New Mexico a system of personnel administration based solely on qualifications and ability, which will provide greater economy and efficiency in the management of state affairs."  N.M. Stat. § 10-9-2.   N.M. Stat. § 10-9-10 requires the SPO, and federal law requires the state, see Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 566-567 (1972), to provide post-termination hearings after state employees have been dismissed, see Copelin-Brown v. NM. State Personnel Office, 399 F.3d at 1256.  State employees may be terminated either for cause (disciplinary reasons), under N.M. Code R. § 7.11.10, or because they can no longer perform their job responsibilities due to disability, under N.M. Code R. § 7.10.13.  Before Copelin-Brown v. N.M. State Personnel Office, the SPO did not provide a hearing for an employee separated for disability under N.M. Code R. § 7.10.13.  Pre- and post-termination hearings always accompanied terminations for cause.  See  N.M. Code R. § 7.11.13(A-C).

## ANALYSIS

The Court will grant the Defendants' summary judgment motion.  Because the Court finds that Bolson and Ivey are entitled to qualified immunity with regard to Count III, the Court will grant them summary judgment on that claim.  Because Martinez has conceded that she has not established a § 1985(3) claim, the Court need not examine any issues pertaining to Count IV before granting the Defendants summary judgment with respect to it.  Because the Court finds that, under the terms of the contract that existed between Martinez and the CYFD, the CYFD was not obligated to provide Martinez with a post-termination hearing, the Court will grant the CYFD summary judgment on Counts I and II.

## I.   THE INDIVIDUAL DEFENDANTS BOLSON AND IVEY ARE ENTITLED TO QUALIFIED IMMUNITY.

If Martinez' allegations are accepted as true, as the Court must, she establishes that her rights of equal protection and due process were violated.   Martinez alleges that the manner of her termination promulgated and enforced N.M. Code R. § 7.10.13, a regulation without rational basis that discriminated against disabled persons.   See FAC ¶53, at 16.   Because disable persons are not a suspect class, rational basis scrutiny applies to § 7.10.13.   See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442-46 (1985).   As such, even the administrative ease of not requiring a hearing, if put forth as a rationale, would be enough to find that § 7.10.13 and its promulgation and enforcement do not violate the Equal Protection Clause.   See Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1255.   Bolson and Ivey, however, do not present facts to show that § 7.10.13 or their promulgation and enforcement of it was designed to achieve a rational result.   Thus, Martinez establishes a violation of her right to equal protection.

With respect to procedural due process, Martinez alleges that she was a state-government employee who was terminated without a pre- or post-termination hearing, pursuant to N.M. Code R. § 7.10.13.   See FAC ¶¶16, 54.   That Martinez was offered a hearing eleven months after being informed that she was terminated, and that, under § 7.10.13, she was not allowed a termination hearing does not alter the fact that she was terminated without a hearing, because a "claim for deprivation of public employment without due process accrues on [the] date of actual termination of employment."   Smith v. City of Enid, 149 F.3d 1151, 1155 (10th Cir. 1998).   As such, because government employees' property interest in their continued employment entitles them to, at a minimum, a post-termination hearing, Martinez establishes a violation of her right to procedural due

process.  See Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1254-55.

Martinez also demonstrates that the law regarding equal protection and due process was clearly established at the time of her termination.  That the government's unequal treatment of disabled persons without a rational basis violates the Equal Protection Clause has been clearly established for some time.  See Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1255 (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. at 442-46; FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993); Davoll v. Webb, 194 F.3d 1116, 1145 (10th Cir. 1999); Spragens v. Shalala, 36 F.3d 947, 951 n.3 (10th Cir. 1994)).  That state employees have the right to a hearing to challenge their termination and that a permanent state employee is entitled to a post-termination hearing "has been established for thirty years."  Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1256 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546-47;  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 576-77).

While Martinez demonstrates that her clearly established constitutional rights to equal protection and due process were violated, she does not establish that Bolson and Ivey are the persons responsible for providing her a post-termination hearing; she does not establish that they subjected her to the deprivation of rights or that they caused her to be subject to the deprivation of rights. Martinez alleges with specific facts that Bolson and Ivey terminated her employment pursuant to N.M. Code R. § 7.10.13; however, she does not show how, when New Mexico law gives the SPO and its components the authority to promulgate regulations to effectuate the State Personnel Act, see N.M. Stat. § 10-9-10, the ability to provide rules for dismissal or demotion procedures, see N.M. Stat. § 10-9-13(H), and the power to hear appeals from terminated state employees, see N.M. Stat. § 10-9-10; N.M. Stat. § 10-9-18(A), Bolson and Ivey, rather than the SPO, are responsible for

depriving her of equal protection and due process.  The Tenth Circuit requires a plaintiff to demonstrate that the defendant before the court is responsible for the constitutional deprivation at issue.  See Martinez v. Mafchir, 35 F.3d 1486, 1491-92; Tonkovich v. Kan. Bd. Regents, 159 F.3d at 518 ("Every person who . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . shall be liable to the party injured . . . .  42 U.S.C. § 1983 (emphasis added).  The plain wording of the statute contains an element of causation.  In other words, a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation. See 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 6.3 (3d ed. 1997); Hunt v. Green, CV03-0585, Memorandum Opinion and Order, at 25-26 (D.N.M. June 24, 2004)(Browning, J.)(applying the rule set forth in Martinez v. Mafchir)(unpublished opinion, available on electronic docket); Ciba v. Lockwood, 1994 WL 924145, *22 (D.N.M. 1994)("The majority of the delay in fact, appears to have arisen within the SPO itself.  This delay, however, was beyond the control of the Defendants to this action.").  Martinez has not pointed to evidence in the record or in New Mexico's statutes or regulations that establishes that Bolson and Ivey, as opposed to the SPO, were responsible for promulgating § 7.10.13 and providing her with the requisite hearing in this case.  The Court also notes here that Bolson and Ivey would not have been able to provide the required hearing, because, to satisfy due process, a post-termination hearing should be before an impartial tribunal, not the very office that issued the termination.  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 518; Walker v. United States, 744 F.2d at 70-71.  Because Martinez has not sufficiently alleged that Bolson and Ivey violated her equal protection and due process rights, the

Court will grant summary judgment in favor of Bolson and Ivey with respect to Count III.[2]

Even if Martinez did establish that Bolson and Ivey, rather than the SPO, were responsible for the deprivation in question, Bolson and Ivey would be entitled to qualified immunity. That is so, because, despite Martinez' showings, Bolson and Ivey can demonstrate that their conduct was objectively reasonable. See Roska v. Peterson, 328 F.3d at 1251 (stating that a state officer who violated a clearly established constitutional right is entitled to qualified immunity if his conduct was, nonetheless, objectively reasonable).

Reliance on a state regulation is an extraordinary circumstance that may render an official's conduct objectively reasonable. See id. "Reliance on a [regulation] does not make an official's conduct per se reasonable. It is, however, one factor to consider in determining whether the officer's actions were objectively reasonable, keeping in mind that the overarching inquiry is one of fair notice." Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d at 846. "Reliance on a . . . regulation . . . will not make an official's conduct objectively reasonable if the . . . regulation is obviously unconstitutional." Id. at 846-47. Further, "officials are generally held to have constructive knowledge of established law." Canon v. City & County of Denver, 998 F.2d 867, 874 n.4 (10th Cir. 1993). While the Tenth Circuit has stated broadly that "[t]he circumstances must be such that the

---

[2] Without prejudging the claim against any other Defendant, the Court notes that, with respect to Martinez' § 1983 claims, while the alleged circumstances of this case do not show that Bolson and Ivey were responsible for depriving Martinez of her rights, they do suggest that Defendant Sandra K. Perez, as a supervisor of the New Mexico Personnel Office, may have been responsible for the deprivation of rights that Martinez experienced. Perez was part of the agency tasked with promulgating regulations to effectuate the State Personnel Act, providing rules for dismissal and demotion, and hearing appeals from terminated state employees. Moreover, the facts that Martinez alleges, and the Tenth Circuit's decision in Copelin-Brown v. N.M. State Personnel Office, would seem to foreclose an attempt by Perez to secure qualified immunity by proving that she acted in an objectively reasonable manner.

defendant was so prevented from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right," see Roska v. Peterson, 328 F.3d at 1251, it has also specifically articulated four factors that courts should consider in determining whether reliance on a regulation rendered an officer's conduct objectively reasonable, see id. at 1253. Those factors – the degree of specificity with which the regulation authorized the conduct in question, whether the officer complied with the regulation, whether the statute has fallen into desuetude, and whether the officer could have reasonably concluded that the statute was not unconstitutional – weigh in favor of finding that Bolson and Ivey acted in an objectively reasonable manner here.

The Court believes that, based upon the Roska factors, Bolson's and Ivey's reliance on N.M. Code R. § 7.10.13 was objectively reasonable. First, § 7.10.13, specifically countenancing the conduct in question, provides:

> A.  Employees who have suffered a job-related injury . . . and are physically . . . unable to perform the essential functions of their pre-injury . . . position, with or without reasonable accommodation, shall be involuntarily or voluntarily separated from the service without prejudice provided:
>
> > (1) the employee has been afforded modified duty . . .;
> >
> > (2) the employee has reached Maximum Medical Improvement prior to the completion of up to 12 months of modified duty . . .;
> >
> > (3) all efforts to reasonably accommodate the medical restrictions of the employee have been made and documented; and
> >
> > (4) the employing agency has exhausted efforts to find other suitable vacant positions within the agency . . .;
>
> C.  Employees involuntarily or voluntarily separated in accordance with § 7.10.13 shall be provided with at least 14 calender days written notice. Such separation is not appealable . . . .

N.M. Code R. § 7.10.13. Second, Bolson and Ivey complied with the provisions of § 7.10.13.

-19-

Before giving Martinez 14 days notice of her termination, Bolson and Ivey afforded her modified duty, allowed her to reach Maximum Medical Improvement, made and documented all reasonable efforts to accommodate her medical restrictions, and exhausted efforts to find her another suitable position within the CYFD.  See Ivey Letter at 1; Summary Judgment Motion at 4; Response at 3. Third, the regulation had not fallen into desuetude as of the time of the conduct at issue.  See Copelin-Brown v. N.M. State Personnel Office, CV02-1638 (D.N.M. April 8, 2004)(Hansen, J.). Finally,  Bolson and Ivey could have reasonably concluded that § 7.10.13 was constitutional.  They could have reasonably presumed that the SPO, the state agency tasked with promulgating regulations to effectuate the State Personnel Act, provide dismissal procedures, and hear termination appeals, would not have created an unconstitutional regulation.  They could have also been reasonably unaware of the relevant Supreme Court and Tenth Circuit jurisprudence concerning equal protection and due process.  While ignorance of the law does not make an officer's conduct objectively reasonable in and of itself, the Tenth Circuit has considered a defendant officer's familiarity with relevant case law in assessing whether his conduct was objectively reasonable.  See Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1257 (noting, in the course of denying qualified immunity sought on the basis of objectively reasonable conduct, that the officers whose conduct was at issue had expertise concerning the relevant state and federal law).  As such, and acknowledging that immunity should be recognized where reasonable officers could disagree on an issue, Bolson and Ivey could have reasonably concluded that § 7.10.13 was not unconstitutional.  See Roska v. Peterson, 328 F.3d at 1251.  Considering the foregoing, the Court believes that Bolson and Ivey would also be entitled to qualified immunity based on objective reasonableness.

Martinez argues, citing Copelin-Brown v. N.M. State Personnel Office, that Bolson's and

Ivey's conduct was not objectively reasonable.  See Response at 9-11.  This case, however, is distinguishable from Copelin-Brown, where the Tenth Circuit found that the officers whose conduct was in question had not acted in an objectively reasonable manner, based upon the expertise and knowledge imputable to the officers involved.  In Copelin-Brown, the Tenth Circuit noted, in its objective reasonableness analysis, the extensive base of relevant knowledge that the officers involved possessed.  The Copelin-Brown court stated:

> Defendants in this case were not mere minions obeying commands, but rather were directors and supervisors of the New Mexico SPO.  Thus, they have expertise in the hiring and firing of state employees, including relevant state and federal law. Accordingly, we find that the law in question was clearly established and a reasonable director or supervisor of the state SPO would have known that his or her activity violated Ms. Copelin-Brown's constitutional rights.

Copelin-Brown v. N.M. State Personnel Office, 399 F.3d at 1257.  By contrast, it should not be assumed that Bolson and Ivey, who worked for the CYFD, not the SPO, were functioning with a similar level of employment-termination expertise that the officers in Copelin-Brown possessed. Those officers, unlike Bolson and Ivey, worked in the state agency specifically and statutorily tasked with promulgating the state government's rules on demotion, dismissal, and termination hearings. The Court, considering that difference, does not believe that Copelin-Brown v. N.M. State Personnel Office is determinative here or that Copelin-Brown should lead it to alter its conclusion that Bolson's and Ivey's conduct was objectively reasonable.

## II.   THE CYFD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MARTINEZ' CONTRACT-RELATED CLAIMS.

Under New Mexico law, the State Employment Act and its attendant regulations and policies constitute an implied employment contract between state employees and their respective state employers.  See Garcia v. Middle Rio Grande Conservancy Dist., 1996-NMSC-029, ¶10, 121 N.M.

-21-

728, 731, 918 P.2d 7, 10; Barreras v. N.M. Corrs. Dep't, 2003-NMCA-027, ¶7, 133 N.M. at 315-16, 62 P.3d at 772-73.  The provisions of the Act cover all state positions and all state employees of various agencies, with some limited exceptions.  N.M. Stat. § 10-9-4.  Thus, the Act covers the CYFD and its employees.  Accordingly, Martinez contends that she had an "implied employment contract with the state, made up of the State Personnel Office rules and regulations."  Response at 8.  Martinez contends that the CYFD's termination of her breached that contract, because the CYFD did not provide her with a post-termination hearing.  The Court, however, accepting the State Employment Act, N.M. Stat. §§ 10-9-1-10-9-25, and its attendant regulations, N.M. Code R. §§ 7.10.1-7-10-14, as the provisions of Martinez' employment contract, does not believe, given the facts Martinez alleges, that the CYFD breached any of the contract's terms.

The State Personnel Act gives the SPO and the SPB, not individual agencies like the CYFD, the duties of promulgating regulations effectuating the Act, see N.M. Stat. § 10-9-10, hearing employee appeals, see id., and providing dismissal, demotion, and appeal procedures, see N.M. Stat. § 10-9-13.  See Martinez v. N.M. Eng'r Office, 2000-NMCA-074, ¶22, 129 N.M. 413, 418, 9 P.3d 657, 663 (acknowledging that the primary duties of the SPB include promulgating rules to carry out the provisions of the State Personnel Act and hearing appeals by state employees aggrieved by an agency's action affecting their employment).  While N.M. Code R. § 7.10.13 required individual agencies, including the CYFD, to follow particular procedures before terminating employees that were unable to perform essential functions because of job-related injuries, Martinez does not present facts which demonstrate that those procedures required the CYFD to provide her with a post-termination hearing or demonstrate that the CYFD did not comply with those procedures.  Thus, the Court finds that the employment contract in question did not require the CYFD to provide Martinez

with a post-termination hearing and that, therefore, the CYFD did not breach the employment

contract in question by not providing Martinez with a post-termination hearing.[3]

The Court also notes that, even if the State Personnel Act and its attendant regulations could

be interpreted as requiring individual agencies to provide post-termination hearings generally, which

the Court does not believe is possible, § 7.10.13, before Judge Hansen's ruling in Copelin-Brown,

specifically precluded the provision of hearings to employees terminated because of job-related injury.

See N.M. Code R. § 7.10.13(D). Thus, an express provision of the employment contract in question

denied Martinez a post-termination hearing. It is a well established principle of contract law that, if

a provision is declared illegal subsequent to formation and severing that provision from the contract

would not destroy the thrust of the contract or the contracting parties' intentions, the illegal provision

should be excised from the contract and its other provisions should be enforced. See Armendariz v.

Found. Health Psychare Servs., Inc., 24 Cal.4th 83, 122-25, 6 P.3d 669, 773-76 (Cal. 2000)("Where

a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in

whole or in part, the contract is void as to the latter and valid as to the rest.")(internal citations and

quotations omitted); Richard A. Lord, Williston on Contracts §§ 19.35, 19.69 (4th ed. 2006)("It was

early decided that where some covenants of an indenture are legal and others illegal the legal

covenants may be enforced."). Accordingly, if § 7.10.13(D)'s removal from the employment

contract, pursuant to Judge Hansen's declaring it unconstitutional, left the CYFD with the obligation

to provide Martinez with a hearing and Martinez believes that the CYFD breached that obligation,

---

[3] Without prejudging the claims against any other Defendant, the Court notes here that the facts Martinez alleges may support a claim that the SPO and the SPB breached the employment contract by not fulfilling their obligations concerning employee hearings under the State Employment Act.

she must exhaust the remedies included within the contract before filing a lawsuit.  Thus, Martinez needed to have exhausted her remedies with the SPO and SPB, pursuant to the right of appeal contained within N.M. Stat. § 10-9-18, before filing her lawsuit.  See Barreras v. N.M. Corrs. Dep't, 2003-NMCA-027, ¶21, 133 N.M. 318, 62 P.3d at 775 (holding that an aggrieved state employee may not proceed directly to district court on a theory of implied contract based on rights accorded under the State Personnel Act)("[W]e hold that the State Personnel Act provides the exclusive remedy for Plaintiff's breach-of-contract claims based on that same Act.  The Plaintiffs were required to proceed administratively before the SPB.  Having declined to appeal their dismissal from the SPB, Plaintiffs are barred from obtaining further relief in the courts.").

Considering the above, the Court believes that the CYFD is entitled to summary judgment on Martinez' breach of contract claim, Count I.

With respect to Martinez' Count II, because a cause of action for breach of the implied covenant of good faith and fair dealing cannot prevail without an accompanying showing for breach of contract, see Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶51, 133 N.M. at 69, P.3d at 925, and because, for the reasons stated above, the Court finds that Martinez has not established that the CYFD breached the implied employment contract in question, the Court will grant summary judgment to the CYFD on this claim.

**IT IS ORDERED** that the Defendants CYFD, Bolson, and Ivey's Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds is granted.  The Court grants the motion with respect to Counts I-IV.

_____
UNITED STATES DISTRICT JUDGE

-24-

*Counsel*:

George Geran
Michelle Masiowski
Albuquerque, New Mexico

     *Attorneys for Plaintiffs*

Elizabeth L. German
Terrill E. Pierce
Brown and German
Albuquerque, New Mexico

     *Attorneys for Defendants New Mexico Department of Health,*
     *Michelle Lujan-Grisham, Brian Brozost, Mary Dale Bolson*
     *Russell Ivey, and the New Mexico Department of Children,*
     *Youth and Families*

Mark Bashaw
Santa Fe, New Mexico

     *Attorney for  Defendants New Mexico State Personnel Office*
     *and Sandra K. Perez*